JOURNAL ENTRY and OPINION
This is an appeal from an order of Juvenile Division Judge Peter M. Sikora, modifying a delinquency disposition to require appellant, C.H., to serve a minimum of twelve months in custody of the Department of Youth Services ("DYS"). C.H. claims the judge erred in imposing a commitment to DYS because he was not informed that such a consequence could follow from a probation violation, and that the DYS commitment violates constitutional due process and double jeopardy protections. We affirm.
On May 18, 1999, a delinquency complaint was filed against then fourteen-year-old C.H., alleging that he assaulted someone using a brick and a broken bottle, an offense that would be felonious assault under R.C. 2903.11 if committed by an adult. At a hearing before Magistrate Patricia M. Yeomans, C.H. apparently[1] admitted to the assault in exchange for a dismissal of other charges stemming from the single incident. Her decision recommended that he be found delinquent and placed on probation with stated conditions. No objections were filed, the judge approved the decision, and it was journalized on December 10, 1999. On December 8, 1999, however, the magistrate held a hearing on C.H.'s alleged probation violations stemming from the unjournalized order, found violations had occurred, and issued a decision committing him to the Youth Development Center ("YDC") in Hudson, Ohio, "for institutional and aftercare services." The judge approved and journalized this order on December 10, 1999, one minute before journalizing the October 4, 1999 probation recommendation. Nevertheless, C.H. did not object to the decision and accepted his commitment to YDC.
C.H. was released from YDC on May 24, 2000 and committed to aftercare treatment, but failed to attend, and by June 4, 2000, was missing from his home. His probation officer moved to find him in violation of the judge's December 10, 1999 commitment order, and he was eventually taken into custody in November 2000, after an investigatory traffic stop. He admitted violating the commitment order and, at a hearing held on January 17, 2001, the magistrate informed him that he would be sentenced to a minimum of twelve months in DYS custody. However, her written decision issued January 17, 2001, committed C.H. to DYS custody for a minimum term of six months, with a maximum term of custody lasting until his twenty-first birthday. The judge approved this order, it was journalized on January 23, 2001, and C.H. did not file objections.
However, on February 9, 2001, the judge approved and journalized another recommendation from the magistrate, apparently submitted on February 1, 2001, changing the minimum term of commitment from six months to twelve months. The modification order stated that "the clerk inadvertently typed in the word `six'" in the original order, and suasponte corrected the mistake.
C.H. appeals the February 9, 2001 order and asserts six assignments of error, the first of which states:
 THE TRIAL COURT VIOLATED [C.H.'S] RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT DENIED HIM THE RIGHT TO BE PRESENT AT EVERY STAGE OF THE PROCEEDINGS AGAINST HIM.
As an initial matter, we must determine whether the appeal is timely or whether C.H. waived error by failing to file objections to the magistrate's decision/recommendation changing his minimum commitment from six months to twelve months. Although written as a magistrate's decision, there is no indication that anyone received notice of it until it was subsequently approved and journalized by the judge. Moreover, although all other decisions of the magistrate (including the January 17, 2001 decision) contained a statement notifying the parties that they had a right to file objections, the sua sponte order of February 9, 2001 did not inform the parties of a right to object. Therefore, although Juv.R. 40(E)(3)(b) requires objection to a magistrate's decision as a prerequisite to assignment of error on appeal, the February 9, 2001 order is more properly seen as a judge's sua sponte action changing the magistrate's decision under Juv.R. 40(E)(4), appropriate for direct appeal. Moreover, because C.H. reasonably could have foregone objection and appeal of the original journal entry committing him for a minimum of six months, his appeal of the subsequent decision imposing less favorable terms is also reasonable and timely.
Although the appeal is timely, C.H. withdrew his first assignment of error at oral argument, and therefore we need not consider it. The first assignment of error is dismissed.
The second assignment states:
 THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED [C.H.'S] RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND JUV.R. 29 BY FAILING TO RECORD THE ENTIRE PROCEEDINGS PURSUANT TO JUV.R. 37.
In assembling the record on appeal, the State was unable to produce a complete transcript of the October 4, 1999 proceedings before the magistrate, at which C.H. admitted to the charge equivalent to felonious assault. C.H. claims that the lack of a record violates Juv.R. 37, and that the State cannot show that his admission and adjudication on the original charge complied with Juv.R. 29. These claims of error are not cognizable in this appeal.
C.H. did not file objections to the magistrate's findings at the October 4, 1999 hearing, he did not appeal from the judge's December 10, 1999 approval and journalization of that finding, and he has never sought leave to file a delayed appeal from those proceedings. Neither did he object to the YDC commitment, which was based on violations of probation conditions that had never been journalized, but instead served that commitment. When the magistrate recommended commitment to DYS in her January 17, 2001 decision, C.H. did not object or seek to raise any issue concerning his original admission and adjudication, but instead appealed only the judge's modification of his minimum sentence to DYS. This is neither the time nor the place to raise the claims in this assignment. C.H.'s Juv.R. 29 claims concern an entirely different final order, and he has not appealed that order here.[2] His Juv.R. 37 claims also have no bearing here, because the transcript of the October 4, 1999 hearing would not contribute to a showing of prejudicial error concerning the issues properly raised.[3] The second assignment of error is overruled.
The third assignment states:
 THE TRIAL COURT VIOLATED [C.H.'S] RIGHT TO DUE PROCESS AND NOTICE AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT IMPOSED UPON HIM A SENTENCE OF INCARCERATION WHEN HE DID NOT PREVIOUSLY KNOW THAT INCARCERATION WAS A POSSIBILITY.
C.H. asks this court to apply a criminal defendant's right in a juvenile proceeding, stating that he was entitled to notification that a probation violation could result in DYS commitment until age twenty-one. While we concede that neither the journal entry imposing probation nor the commitment to YDC and aftercare stated that violations would result in commitment to DYS, we cannot find that the criminal right to such notice is applicable here.
When a criminal defendant is sentenced to a community control sanction, he may not be sentenced to a prison term for violating community control unless he was informed of that consequence at sentencing. R.C. 2929.15(B) requires that a defendant be notified, at the sentencing hearing, of the length of any prison term the judge may impose for violating community control.[4] Although C.H. asserts a comparable right in juvenile proceedings, and asserts a constitutional violation in his assignment of error, he has adduced no constitutional source for the right stated in R.C. 2929.15(B). Moreover, a specific provision, R.C.2151.355, outlines the dispositions available for juvenile delinquents, provides a range of dispositions from probation to DYS commitment, and omits any mention of the provision expressly made for criminal defendants in R.C. 2929.15(B). Under these circumstances, we can only conclude that state legislators intentionally denied juveniles the criminal right at issue.
Although one might rationally postulate a constitutional due process right to notice as the source of the right codified in R.C. 2929.15(B), C.H. has provided us no authority or argument to persuade us that such a right exists, and, in fact, the prior scheme of adult probation was upheld against a constitutional double jeopardy challenge.[5] Although this does not foreclose the possibility of a due process argument, the similarities between the two arguments in this case certainly prevent us from accepting the unsupported assertion of a constitutional right in an assignment of error.
In arguing the assignment, C.H. has argued only that the criminal statute should be applied in juvenile proceedings, and, as noted supra, we agree with those courts that have previously addressed the issue on at least one point — that R.C. 2151.355 does not require a judge to impose and then suspend a DYS commitment in order to commit the adjudged delinquent to DYS at some later date, and expressly authorizes the judge to make "any further disposition" of the delinquent.[6] While other courts have also addressed whether the goals of juvenile adjudication are consistent with the right asserted here, we are unable to do so because, as noted, C.H. has not set forth a constitutional argument. Absent constitutional authority, legislative intent controls the issue. The third assignment of error is overruled.
The fourth assignment states:
 [C.H.'S] RIGHT NOT TO BE PUNISHED TWICE FOR THE SAME OFFENSE AS GUARANTEED BY THE DOUBLE JEOPARDY CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WAS VIOLATED WHEN THE COURT IMPOSED A DYS COMMITMENT AFTER CHRISTOPHER HAD SERVED A PERIOD OF INCARCERATION IN THE YOUTH DETENTION [SIC] CENTER.
C.H.'s due process and double jeopardy arguments are nearly inseparable; he claims the judge, to satisfy both constitutional notice requirements and restrictions on imposing multiple sentences for a single offense, was required to impose and suspend any more serious punishment before it could be imposed as a sanction for violating a less serious commitment.
C.H. was committed to YDC, apparently under R.C. 2151.355(A)(3), for "institutional and aftercare services as determined by the director of said facility." His subsequent commitment to DYS resulted from his violation of the YDC aftercare conditions when he disappeared after his release from the residential facility.
The Ohio Supreme Court has held that, on revocation of probation, a judge is allowed to impose, any sentence that originally could have been imposed without violating double jeopardy.[7] The violation here appears to be the functional equivalent of a violation of the conditions of probation, and should be treated as such. The fourth assignment of error is overruled.
The fifth assignment states:
 THE TRIAL COURT VIOLATED [C.H.'S] RIGHT TO THE EQUAL PROTECTION OF THE LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE OHIO CONSTITUTION WHEN IT FAILED TO INFORM HIM OF THE POSSIBLE COMMITMENT TO BE IMPOSED UPON VIOLATING PROBATION.
C.H. claims that the right to notice of the consequences of violating community control sanctions is fundamental, and that denial of the right in juvenile proceedings violates equal protection. As noted supra, however, he has not shown that the claimed right is fundamental in any respect but has, instead, asserted only that the statutory grant of the right to criminal defendants should be extended to juveniles, and he has not argued that juvenile offenders are a suspect class. Therefore, instead of the strict scrutiny we grant where fundamental rights or a suspect class are involved, we instead apply only rational basis scrutiny.[8]
The Tenth District Court of Appeals found that the purposes of juvenile proceedings precluded the claimed right to have a sentence of incarceration imposed and suspended prior to the imposition of probation, stating that protective and rehabilitative goals were furthered by avoiding the increased stigma attached to a suspended sentence of commitment rather than simple probation, and that if the probation was violated, a judge might feel compelled to impose the suspended commitment rather than consider less restrictive options.[9] This reasoning also provides a rational basis for omitting the requirement of notice in juvenile proceedings. R.C. 2151.355 is designed to give judges a wide selection of dispositional options, and the discretion to impose them when appropriate.
The notice requirement C.H. requests would force judges to restrict their ability to choose appropriate sanctions in response to particular violations that might occur, which would defeat the statute's goals. While a judge should inform a juvenile of the maximum commitment available under Juv.R. 29, and that he retains jurisdiction to make further dispositional orders if the juvenile fails to comply with the conditions of probation or other disposition, the judge is not required to notify the juvenile of particular dispositions that will be imposed for violations. The fifth assignment of error is overruled.
C.H.'s sixth assignment of error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO PROPERLY CALCULATE AND CREDIT [C.H.'S] DETENTION CREDIT PURSUANT TO R.C. 2151.355(F)(6).
C.H. claims that the time he spent at YDC should be credited against his minimum DYS commitment under R.C. 2151.355(F)(6), which reduces the DYS commitment by the number of days the juvenile has been held in "detention." We disagree, because R.C. 2151.011(A)(12) defines "detention" as "the temporary care of children pending court adjudication or disposition, or execution of a court order * * *." This definition excludes the YDC commitment because, even if it is equivalent to incarceration, it is itself a disposition, and is not a restraint imposed pending some other disposition. Because it does not meet the statutory definition of detention, there is no statutory basis for crediting the YDC commitment to the DYS term, and while C.H. has again pointed to criminal law corollaries for his argument, he has neither asserted nor shown any constitutional support for his claims. The definition of detention used in R.C. 2921.01 is expressly applicable only to the offenses listed in that chapter, most notably escape, R.C. 2921.34. While that definition might be instructive for other purposes, it cannot be applied in juvenile proceedings where R.C. 2151.011 plainly defines the term differently for use in that chapter. As noted supra, absent constitutional authority, the legislative intent controls here. The sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM.J. and TIMOTHY E. McMONAGLE, J. CONCUR.
[1] Although a complete transcript of this hearing could not be produced, an issue we will discuss further infra, we have gleaned the necessary facts from the existing record.
[2] App.R. 3(D).
[3] App.R. 12(B).
[4] State v. Virasayachack (2000), 138 Ohio App.3d 570,741 N.E.2d 943.
[5] State v. McMullen (1983), 6 Ohio St.3d 244, 6 OBR 312,452 N.E.2d 1292.
[6] 2151.355(A)(22); In re Kelly (Nov. 7, 1995), Franklin App. No. 95APF05-613, unreported; In re Guy (Mar. 24, 1997), Butler App. No. CA96-10-196, unreported.
[7] McMullen, supra.
[8] San Antonio Indep. School Dist. v. Rodriguez (1973), 411 U.S. 1,17-18, 93 S.Ct. 1278, 1287-88, 36 L.Ed.2d 16, 33.
[9] In re Kelly, supra.